UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PHYLINA B.,

              Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

20-CV-0526-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13)

Plaintiff Phylina B.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 10) is denied and defendant's motion (Dkt. No. 11) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff applied for DIB on April 27, 2017, alleging disability beginning March 1, 2015, due to ankle impairments, neck and back pain, depression, and anxiety.[3] (Tr. 152-53, 173)[4] Her claim was denied at the initial level on June 1, 2017, and again after a *de novo* hearing before an Administrative Law Judge ("ALJ"). (Tr. 9-27, 34-68, 80-91) The Appeals Council denied plaintiff's request for review on March 3, 2020. (Tr. 1-6) This timely action followed. (Dkt. No. 1)

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*,

---

[2] The Court presumes the parties' familiarity with the case.

[3] Plaintiff's motion does not challenge the ALJ's findings concerning her mental impairments.

[4] References to "Tr." are to the administrative record in this case. (Dkt. No. 8)

312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's

regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of March 1, 2015. (Tr. 14) At step two, the ALJ found that plaintiff had the severe impairments of degenerative joint disease, right ankle sprain, right ankle closed fracture, and osteoperosis. (Tr. 14-18) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the Listings. (Tr. 18-19) Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except she could occasionally perform all posturals.[5] (Tr. 19-22) The ALJ determined at step four that plaintiff could not perform her past relevant work as a hostess. (Tr. 22) At step five, the ALJ found that plaintiff could perform work that existed in significant numbers in the national economy, such as jobs of bench worker, inspector, and office helper. (Tr. 23) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 24)

---

[5] Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.*; Social Security Ruling ("SSR") 83-10, 1983 WL 31251 *5. Postural activities include balancing, kneeling, stooping, crouching, and crawling. SSR 96-9p, 1996 WL 374185.

6

IV.  *Plaintiff's Challenge*

Plaintiff seeks remand on the basis that the ALJ relied on his own lay interpretation of the medical record to make an RFC determination and did not properly rely upon the opinion evidence. (Dkt. No. 10-1 at 11-18)  The Court disagrees.

In this case, the ALJ evaluated the May 21, 2015, statement of plaintiff's treating orthopedic physician's assistant ("PA May"), who noted that plaintiff "remains out of work as there is no light duty available." (Tr. 21; *see* 239-40)  PA May later reported on July 20, 2015, that plaintiff would return to work on July 23, but did not note any restrictions or limitations. (Tr. 21; *see* 246)  The ALJ found PA May's May 21, 2015, statement "mostly persuasive with the record" and fully supportive of the RFC. (Tr. 21)

Contrary to plaintiff's argument, *see* Dkt. No. 10-1 at 12-16, the RFC finding need not be based on a medical opinion, but can be based on other evidence, such as medical findings and activities of daily living. *See* 20 C.F.R. § 404.1520(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. § 404.1545(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. § 404.1513(a)(1),(4) (evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

The Second Circuit has held that a medical opinion is not always required for the ALJ to make an RFC determination. *See Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (holding that the ALJ's RFC finding, which restricted plaintiff to non-stressful work,

7

was supported by the clinical findings of an examining psychiatrist and plaintiff's hearing testimony); *Cook v. Comm'r of Soc. Sec.*, 818 Fed. Appx. 108 (2d Cir. Aug. 28, 2020), (affirming the Commissioner where the record contained no medical opinion assessing the specific restrictions reflected in the RFC determination, observing that treatment notes were in line with the ALJ's determination); *Corbiere v. Berryhill*, 760 Fed. Appx. 54, 56 (2d Cir Jan. 23, 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly speaking to the physical portion of the RFC determination of sedentary work, and relying, instead, on the relevant medical findings in the treatment notes); *Monroe v. Comm'r of Soc. Sec*, 676 Fed. Appx. 5, 9 (2d Cir. 2017) (ALJ could rely on treatment notes and activities of daily living to formulate the RFC assessment, and rejecting the argument that a medical opinion was required); *Johnson v. Colvin*, 669 Fed. Appx. 44, 46 (2d Cir. 2016) (ALJ looks to "all of the relevant medical and other evidence" including relevant medical reports, medical history, and statements from the claimant when assessing an applicant's RFC).

Here, the ALJ relied, in part, upon PA May's statement to conclude that plaintiff could perform a range of light work with limitations. (Tr. 21) The ALJ also considered approximately 500 pages of records in reaching his determination, which revealed largely normal physical examination findings, as well as plaintiff's daily activities, as discussed in further detail below. (Tr. 19-22)

First, although plaintiff complained of right ankle pain, her physical examinations were largely normal and she did not follow medical advice or pursue long-term treatment, all of which support the ALJ's RFC finding and are inconsistent with plaintiff's allegations of disability. (Tr. 20-22) For example, on May 7, 2015, when plaintiff first complained of

right ankle pain due to a fall the month prior, see Tr. 231-34, PA Lex at Excelsior Orthopedics recommended that plaintiff rest and use crutches as needed. (Tr. 233) The ALJ noted that during plaintiff's follow-up appointment in April, 2015, she reported being "on her feet a lot during the day." (Tr. 20; see 237) Moreover, although PA May recommended physical therapy at the April, 2015, visit, see Tr. 237, plaintiff had not followed up on his recommendation at the time of her next appointment on May 21, 2105. (Tr. 20; see 238) The ALJ also cited portions of the record indicating normal muscle tone and good strength in the right ankle with some tenderness and swelling on examination; denial of joint pain, stiffness, swelling, and weakness at a July, 2015, visit; self-reported improvement in the right ankle; and discontinuance of orthopedic treatment after July, 2015. (Tr. 20; see Tr. 235, 236, 239, 242-46)

The ALJ's finding that plaintiff could perform light work with occasional postural activities is supported by the largely normal examinations of her ankle and her own statements indicating that her ankle pain resolved. Moreover, plaintiff's failure to follow recommended medical advice and seek long-term treatment for her ankle supports the ALJ's findings. See Salvaggio v. Apfel, 23 Fed. Appx. 49, 51 (2d Cir. 2001) ("the result of the plaintiff's choice to seek only minimal medical attention of her symptoms. . . supports the finding that the plaintiff was not under a disability.").

The ALJ also discussed the record evidence pertaining to plaintiff's other impairments. (Tr. 21) The ALJ cited treatment records from plaintiff's primary care provider, which showed largely normal physical examinations and conservative treatment for her complaints of body aches and muscle pain. (Tr. 21; see 249-51, 259-261, 318, 426-47) Plaintiff was consistently diagnosed with osteoporosis beginning in December,

2016, and was prescribed medication. In October, 2018, plaintiff reported feeling well with no complaints, and physical examination showed no acute distress, she appeared well with no abnormalities and normal pulses. Plaintiff was again diagnosed with osteoporosis and was prescribed continued calcium and vitamin D. (Tr. 21, see 455-57)

Additionally, the ALJ explained that plaintiff failed to submit a Function Report, but did submit a Disability Appeal form, in which she reported no change in her condition since May of 2017, did not have any new medical conditions, and was not currently taking any prescribed or nonprescribed medications. (Tr. 21; see 180-83)

Plaintiff's unremarkable physical examinations and her history of conservative treatment for her impairments, supports the ALJ's finding that she could perform a range of light work. See Penfield v. Colvin, 563 Fed. Appx. 839, 840 (2d Cir. 2014) (claimant receiving only conservative treatment is evidence that can weigh against allegations of disabling symptoms); see also 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJ properly considers the claimant's treatment modalities and their effectiveness).

The ALJ also noted that at the administrative hearing, plaintiff testified that she could cook, take care of her small dog, babysit her grandchildren occasionally, and enjoyed photography as a hobby. (Tr. 19, 22; see 58) The ALJ found that these activities were inconsistent with plaintiff's claims that she remained in bed all day due to pain.[6] (Id.) The ALJ properly considered these activities as a factor in formulating the RFC. See, e.g., Krull v. Colvin, 669 Fed. Appx. 31, 32 (2d Cir. 2016) (ALJ properly considered plaintiff's ability "to engage in moderately complex tasks" such as childcare); Cichocki v. Astrue, 729 F.3d 172, 178 (2d Cir. 2013) ("The ALJ also relied on Cichocki's Daily

---

[6] The ALJ further noted that plaintiff's description of her symptoms was "vague and general," and lacking in specificity. (Tr. 21)

Activities Questionnaire on which she indicated that she performed numerous daily tasks, such as walking her dogs and cleaning her house, that are consistent with a residual capacity to perform light work."); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) ("the ALJ correctly noted that Poupore was able to care for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer").

In sum, the ALJ's RFC finding is supported by plaintiff's largely normal physical examinations, her failure to follow medical advice or pursue long-term treatment, her receipt of only conservative treatment for all of her impairments, and a range of daily activities. *See e.g., Thomas S. v. Comm'r*, No. 19-CV-1663, 2021 WL 1293105, at *6 (W.D.N.Y. Apr. 7, 2021) (although RFC did not correspond to a medical opinion in the record, the ALJ properly relied on the record as a whole, including medical opinion evidence, objective mental status examinations, and plaintiff's testimony concerning his daily activities). Plaintiff has not met her burden of proving that she was more restricted than the ALJ found.

Finally, although plaintiff now asserts that the ALJ should have ordered a consultative examination to further develop the record, *see* Dkt. No. 10-1 at 15, the available opinion evidence was specifically discussed at the administrative hearing. Plaintiff's counsel stated that he did not receive any opinion evidence from plaintiff's medical providers, nor was there a consultative examination in the case. Nonetheless, counsel noted no objections and proceeded with the hearing. (Tr. 38) In any event, the ALJ was not required to order a consultative examination because there was sufficient evidence for him to make the disability determination. *See Cox v. Astrue*, 993 F. Supp.

2d 169, 178 (N.D.N.Y. 2012) (an ALJ is not required to order a consultative examination where the plaintiff is represented by counsel and there is no conflict, inconsistency, ambiguity, or insufficiency in the evidence that must be resolved).

For all of these reasons, the ALJ's decision is supported by substantial evidence and free of legal error.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   April 19, 2021
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge